UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

PETER JACQUEMAIN,

    Defendant.
                                           /

Case No. 03-80863

Honorable Nancy G. Edmunds

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT PETER JACQUEMAIN'S MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT V, OBSTRUCTION OF JUSTICE, PURSUANT TO FED. R. CRIM. P. 29 AND FOR NEW TRIAL [126]**

On June 25, 2004, Defendant Peter Jacquemain was convicted by a jury of Count Five of the Second Superseding Indictment, charging him with obstruction of justice in violation of 18 U.S.C. § 1512(b)(3). The charges arose out of the July 27, 2002 arrest of Robert Paxton, which initiated from a road rage incident on Gratiot Avenue in Mt. Clemens involving an off-duty Mt. Clemens police officer, Co-Defendant Officer Hey.

Defendant Peter Jacquemain, a Mt. Clemens police officer, was involved in the arrest of Robert Paxton. The indictment charged that on July 27, 2002, Defendant completed and submitted to the Mt. Clemens Police Department a report containing false and misleading information about Paxton's arrest and thereby "did knowingly engage in misleading conduct toward another person with intent to hinder, delay and prevent the communication to a federal law enforcement officer and federal judge of any information relating to the commission or possible commission of a federal criminal civil rights offense, under 18

U.S.C. § 242, involving the willful deprivation of Robert Paxton's right to be free from the use of unreasonable force by one acting under color of law."

Defendant now moves for judgment of acquittal, pursuant to Fed. R. Crim. P. 29(c), and for a new trial.[1]  For the reasons stated below, Defendant Peter Jacquemain's motion is DENIED.

**I.     Facts**

The charges against Defendant Peter Jacquemain arose out of the July 27, 2002 arrest of Robert Paxton.  Defendant, a Mt. Clemens police officer, was involved in Paxton's arrest.  Paxton's arrest was initiated by a road rage incident on Gratiot Avenue in Mt. Clemens involving an off-duty Mt. Clemens police officer, Co-Defendant Officer Hey.

At trial, there was evidence that Paxton was pulled from his pick-up truck, thrown to the ground, and restrained by Defendant Robert Jacquemain and four or five other uniformed Mt. Clemens police officers.  (Brian Pike, 6/18/04 Tr. at 83-85; Foltz, 6/17/04 Tr. at 145.)  Various witnesses testified of seeing arms moving up and down in a punching motion, and of seeing a body assuming a protective fetal-position like posture, to ward off blows to the body.  There was testimony from civilian witnesses, Brian Pike (passenger in off-duty Officer Hey's car), Duane Poucher and Robert Paxton that an officer or officers struck repeated blows to Paxton's head.  Duane Poucher, one of the Mt. Clemens police officers involved in the arrest, testified that he repeatedly kicked Paxton, that at no point was Paxton the aggressor, and that Paxton in no way posed any threat to the officers. (Poucher, 6/10/04 Tr. at 82-83.)  Civilian witnesses corroborated this testimony.  The jury,

---

[1]Co-Defendant Robert Jacquemain has filed a motion [127] joining in this motion.

rejecting an argument that the Defendant Officers reasonably perceived a significant threat of violence from Paxton, found Defendant Officer Carson guilty of a federal crime; i.e., using excessive force in the arrest of Robert Paxton.

At trial, there was also testimony that Peter Jacquemain assisted in physically restraining Paxton, who was hit and kicked by Co-Defendant Officer Carson and Officer Duane Poucher, and then went back to the Mt. Clemens police station and wrote a police report that portrayed Paxton as the aggressor and failed to mention that any police officer struck Paxton. The statements in Defendant's police report were directly contradicted by the trial testimony of Mt. Clemens Police Office Duane Poucher, who took part in the arrest; and Brian Pike, the passenger in the vehicle that was driven by off-duty Mt. Clemens Police Officer Hey and was involved in the road rage incident that culminated in Paxton's arrest.

## II. Analysis

Defendant's motion for acquittal and new trial raises three arguments: (1) there was insufficient evidence on the intent element required to support his conviction for obstruction justice in violation of 18 U.S.C. § 1512(b)(3); (2) the district court improperly excluded proffered evidence as hearsay; and (3) the jury instructions improperly misled the jury. The Court addresses each of these, beginning with the insufficiency of evidence argument.

### A. Rule 29 - Sufficiency of the Evidence - Obstruction of Justice Conviction

"In deciding whether the evidence is sufficient to withstand a motion for an acquittal, and support a conviction, the court views all evidence in the light most favorable to the prosecution and determines whether there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999). The court does not independently weigh the evidence or assess the credibility

of trial witnesses. *Id.* It must, however "consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Fusero*, 106 F. Supp.2d 921, 926-27 (E.D. Mich. 2000) (internal quotation marks and citation omitted). To prevail on his Rule 29 motion, Defendant must show that, even when "viewing the evidence in a light most favorable to the prosecution," no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Talley*, 164 F.3d at 996 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

To obtain a conviction for obstruction justice in violation of 18 U.S.C. § 1512(b)(3), the government must prove three elements beyond a reasonable doubt: (1) that the defendant knowingly and willfully engaged in misleading conduct to another person, (2) with the intent to hinder, delay or prevent the communication of truthful information to a federal law enforcement officer or judge, and (3) such information was about the commission or possible commission of a federal offense. *See* 18 U.S.C. § 1512(b)(3); *United States v. Veal*, 153 F.3d 1233, 1253 (11th Cir. 1998).

For purposes of this motion, Defendant concedes the first and third elements necessary for a conviction under 18 U.S.C. § 1512(b)(3), namely that Defendant knowingly and willfully engaged in misleading conduct about the possible commission of a federal offense.[2] Defendant does, however, contest that the government's proofs were sufficient

---

[2] 18 U.S.C. § 1515(3) defines "misleading conduct" as:

(A)   knowingly making a false statement;

(B)   intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally

4

to establish the second element, that the misleading conduct was committed with the intent to hinder, delay or prevent the communication of truthful information about the possible federal offense to a federal law enforcement officer or judge. Specifically, Defendant argues that "[t]he giving of a false statement to another state police officer, who may or may not communicate the possible commission of a federal offense to federal authorities at some unspecified time in the future, is insufficient to make out a violation of § 1512(b)(3). . . . There is no evidence that the likelihood or possibility of that action might impact a future federal investigation or that this thought played any part in his writing of the report." (Def.'s Br. at 4.) Defendant is mistaken.

The federal courts have consistently observed that § 1512(b)(3) "require[s] only a possibility that the [defendant's] conduct will interfere with communication to a federal agent." *United States v. Baldyga*, 233 F.3d 674, 680 (5th Cir. 2000) (citing cases). As to the defendant's intent, the courts have further observed that "'[a]ll that § 1512(b)(3) requires is that the government establish that the defendant[] had the intent to influence an investigation that happened to be federal.'" *Id*. at 681 (quoting *United States v.*

---

    concealing a material fact, and thereby creating a false impression by such statement;

    (C)    with intent to mislead, knowingly submitting or inviting reliance on a writing or recording that is false, forged, altered, or otherwise lacking in authenticity;

    (D)    with intent to mislead, knowingly submitting or inviting reliance on a sample, specimen, map, photograph, boundary mark, or other object that is misleading in a material respect; or

    (E)    knowingly using a trick, scheme, or device with intent to mislead.

*Applewhaite*, 195 F.3d 679, 687 (3d Cir. 1999)).

Despite Defendant's arguments to the contrary, the government presented sufficient evidence from which a rational jury could conclude that Defendant's intent, in providing misleading information in his police report, was to foreclose the possibility that truthful information might be transferred to law enforcement officials who investigate federal crimes involving the use of excessive force by the police during an arrest.

The jury was instructed, with no objection from Defendant, that "misleading conduct" meant: (1) making a false statement, (2) intentionally omitting information from a statement and thereby causing a portion of the statement to be misleading, and (3) intentionally concealing a material fact and thereby creating a false impression by such statement. The jury was also instructed, without any objection from Defendant, that "the government must prove . . . that a defendant intended to foreclose the possibility, either temporarily or permanently, that truthful information might be transferred to law enforcement officers who investigate federal crimes." (6/20/04 Tr. at 119.)

Defendant does not contest that his police report was misleading as defined in 18 U.S.C. § 1515. There was evidence at trial that Defendant's police report contained false and misleading statements so as to hinder any investigation into the reasonableness of the force used on Paxton during his arrest. Defendant wrote that he saw Paxton attempt to run at police officers in a threatening manner, with fists clenched. This was directly contradicted by trial testimony from Police Officer Duane Poucher, Brian Pike, and Paxton. Defendant's report failed to say anything about any officer striking Paxton. This was directly contradicted by trial testimony from Poucher, Paxton, Pike and civilian witnesses.

There was also evidence at trial showing why Defendant engaged in this misleading

conduct; i.e., that Defendant wanted to suppress the truth about Paxton's arrest because he knew there could be a possible violation of Paxton's Fourth Amendment rights to be free from excessive force administered under the color of law. Poucher's trial testimony and government exhibits 52, 46A, and 46B provide sufficient evidence for a rational jury to conclude that Defendant's intent in providing the misleading police report was to hinder a possible federal investigation into the police officers' commission of a federal offense during Paxton's arrest.

Poucher testified that, when he was first approached about writing a misleading police report, he understood the intent was to avoid getting "in trouble for beating him [Paxton] up." (6/10/04 Tr. at 90.) Poucher referenced his training at the police academy about excessive force violations committed "under color of law." *Id.* He testified that he understood that the police report had to say that Paxton was the aggressor "[b]ecause it is illegal for a police officer, or police officers to assault citizens. It's called under the color of law. . . . It's a federal law. That's why we're here. . . . it's acting under color of law when you assault somebody, meaning you're a police officer." *Id.* This testimony allowed the jury to infer that at the time Defendant's false police report was prepared, the intent was to avoid a possible federal prosecution for using excessive force.

In addition, there was trial evidence that all Michigan police officers, including Defendant, receive training regarding the potential consequences of the use of excessive force. That training includes instruction that "if officers use excessive force they could be prosecuted in state <u>or federal court</u>." (Govt. Ex. 52 (emphasis added).) Defendant's training records showed that he had in fact attended a course that included this training. (Govt. Exs. 46A and B.)

When considered in the light most favorable to the government, this evidence is sufficient for a rational jury to conclude that Defendant prepared his false and misleading police report with the intent to hinder a possible federal investigation for the use of excessive force during Paxton's arrest in violation of his Fourth Amendment rights. Accordingly, this Court denies Defendant's Rule 29(c) motion and concludes that there was sufficient evidence on the intent element required to support his conviction for obstruction justice in violation of 18 U.S.C. § 1512(b)(3).

**B. New Trial Arguments**

Defendant's final two arguments address the need for a new trial. Because this Court is denying Defendant's motion for a judgment of acquittal under Rule 29,[3] pursuant to the

---

[3]Fed. R. Crim. P. 29(d) provides as follows:

**(d) Conditional Ruling on a Motion for New Trial**

**(1) Motion for a New Trial.** If the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. The court must specify te reasons for that determination.

**(2) Finality.** The court's order conditionally granting a motion for a new trial does not affect the finality of the judgment of acquittal.

**(3) Appeal.**

**(A) Grant of a Motion for a New Trial.** If the court conditionally grants a motion for a new trial and an appellate court later reverses the judgment of acquittal, the trial court must proceed with the new trial unless the appellate court orders otherwise.

8

plain language of Rule 29(d), there is no need for this Court to conditionally grant or deny Defendant's motion for a new trial.

Even if Defendant's sufficiency of the evidence argument fails under Rule 29, the Court may grant a new trial if Defendant satisfies his burden under Fed. R. Crim. P. 33. Accordingly, the Court analyzes Defendant's new trial arguments under Rule 33.

### 1. Rule 33 Standard of Review

Federal Rule of Criminal Procedure 33 permits the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 further provides that new trial motions "grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(a)(1). "Unless a motion for a new trial is based on newly discovered evidence, it must be filed within seven days of the verdict or within such further time as the court may fix during that seven-day period." *United States v. Koehler*, 24 F.3d 867, 869 (6th Cir. 1994) (citing Fed. R. Crim P. 33(b)). "If the motion is untimely, the court lacks jurisdiction to consider it on the merits." *Id.* Here, the Court granted Defendant's request for more time to file his post-trial motions and thus it has jurisdiction to consider a Rule 33 motion on the merits.

The decision whether to grant a Rule 33 motion for a new trial lies within the Court's sound discretion. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994). "The defendant

---

**(B)  Denial of a Motion for New Trial.** If the court conditionally denies a motion for a new trial, an appellee may assert that the denial was erroneous. If the appellate court later reverses the judgment of acquittal, the trial court must proceed as te appellate court directs.

9

bears the burden of proving that a new trial should be granted." *Id.*

### 2. Exclusion of Hearsay Evidence

Defendant first argues that this Court improperly excluded his a portion of his oral statement to Special Agent Foltz as inadmissible hearsay. Specifically, Defendant argues that his oral statement to Foltz that "Carson hit Paxton twice with a closed fist while holding onto his flashlight with his gloved hand" should have been admitted to show that he was not trying to cover up or hinder the investigation of any federal offense. As this Court previously held, Defendant's proffer of this evidence is relevant only if he can establish that his statements were truthful. Accordingly, they were properly excluded as hearsay.

### 3. Jury Instructions

Defendant also argues that he is entitled to a new trial because, although Count V of the indictment dealt only with the police report he prepared on July 27, 2002 and not his subsequent interview with Special Agent Foltz, the jury instructions did not make this clear. Defendant speculates that Defendant's conviction on Count V "may have resulted from a determination by some members of the jury that the March 12, 2003 interview was the 'misleading conduct' addressed in Count V." (Def.'s Br. at 15.) Defendant further speculates that "the jury may have been non-unanimous as to what specific conduct constituted the violation alleged in Count V." (*Id.*) Defendant's arguments are not persuasive.

The instructions given to the jury were agreed upon by all parties in this case. Accordingly, the government invokes the doctrine of invited error, and argues that Defendant cannot agree to jury instructions and then later seek re-trial based upon an objection he could have but failed to raise as to those jury instructions. *Cf. United States*

10

*v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993) (observing that there is no appellate review of errors invited by the defendant).  In *United States v. Barrow*, 118 F.3d 482 (6th Cir. 1997), the Sixth Circuit observed that "[i]nvited error. . . does not foreclose relief when the interests of justice demand otherwise."  *Id.* at 491.  The *Barrow* court distinguished the holding in *Sharpe* as follows:

> [T]his case can be distinguished from *Sharpe* in that the defendant in that case was simply challenging the jury instructions as faulty, *see* 996 F.2d at 128, while the defendant here is claiming that his constitutional rights have been violated because the District Court instructed the jury that the government had proven certain elements of the offenses.  Thus, this is a case where the interests of justice would best be served if we consider defendant's assignment of error, even if we find they have no merit.  This does not mean, however, that the fact that the parties stipulated to the instructions will not play a role in our analysis of some of defendant's claims.

*Barrow*, 118 F.3d at 491.  The *Barrow* court then observed that Fed. R. Crim. P. 52(b) allows the court "to correct plain errors that were not raised before the District Court."  *Id.*  It set forth the four factors considered under the plain error analysis used for unobjected-to or stipulated-to jury instructions.  The court concluded that "[w]e must find each of these four factors to be present before we can exercise discretion to correct an error."  *Id.*  The four factors are: (1) whether an error occurred in the district court; (2) if an error occurred, was the error was plain; (3) does that plain error affects substantial rights; and (4) whether the plain error affecting substantial rights affected the fairness, integrity or public reputation of judicial proceedings.  *Id.*

Defendant's speculative arguments do not address any of these factors.  Most importantly, Defendant's arguments fail to identify how any particular jury instruction, or the instructions as a whole, incorrectly stated the law or misled the jury.  The record reveals that the distinction between the substantive obstruction of justice count (limited to July 27,

11

2002) and the conspiracy count (spanning a number of overt acts over the course of a year) was identified on the record by counsel for Co-Defendant Daniel Gerkey, Mark Kriger. In the presence of Defendant's counsel, Mr. Kriger emphasized that the verdict on the substantive counts could only be based upon the reports written the night of the incident. (6/22/04 Tr. at 99.)  The government agreed, and all parties made that point clear to the jury in their closing arguments.

After the substantive instructions, the same type of issue came up regarding identifying precisely for the jury which conduct was charged in which count.  (*Id.* at 132.) The Court instructed counsel that it was their responsibility to address the point in their closing arguments, but if the parties still had an issue with it after closing, then it would need to be addressed via jury instructions.  Defendant heard the government's closing, made his closing, heard his Co-Defendants' closings, heard the government's rebuttal, and at no point did he suggest that any argument was improper or misleading as to this issue. At no point did he identify any statements which might confuse the jury.  At no point did he ask the Court to address the issue in final instructions.  He has not shown that he is entitled to a new trial based on the failure to give an instruction he did not request.

**III.   Conclusion**

For the foregoing reasons, Defendant's motion for judgment of acquittal, pursuant to Fed. R. Crim. P. 29(c), and for new trial is DENIED.


                        s/NANCY G. EDMUNDS
                        Nancy G. Edmunds
                        U.S. District Judge

Dated: April 29, 2005